PEOPLE v. CRAWFORD.

1. CRIMINAL LAW—TRIAL — ARGUMENT OF PROSECUTOR — APPEAL AND ERROR—CURING ERROR.
   In a criminal prosecution, where the defense was an alibi, a statement by the prosecutor, unsupported by evidence, that in his opinion the three alibi witnesses were with defendant at the scene of the crime on the night it was committed, although erroneous, *held*, not prejudicial, in view of the fact that the court cautioned the jury in regard thereto when it was called to his atten-

As to evidence of other crimes in prosecution for burglary, see notes in 62 L. R. A. 236, 285, 317, and 324.

tion, and that said witnesses were completely discredited on the record.

2. SAME—ARGUMENT OF COUNSEL.

A statement by the prosecuting attorney to the jury that "the respondent has a criminal record and that it stands undisputed and uncontradicted," was warranted by the admission of the defendant to the officers at the time of his arrest that he had served time in a penal institution.

3. SAME.

Argument of the prosecuting attorney and his conduct in the cross-examination of witnesses, *held*. without reversible error.

4. SAME—BURGLARY—EVIDENCE—RES GESTÆ—REMOTENESS.

In a prosecution for breaking and entering a bank in the nighttime with intent to commit the crime of larceny and burglary, the admission in evidence of burglar's tools, found in defendant's possession at the time of his arrest, about seven weeks after the commission of the offense, was not open to the objection that it was too remote, where they were admissible as part of the *res gestæ* of the arrest, and the court limited the use of said evidence to the purpose of showing defendant's character.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted January 12, 1923.    (Docket No. 142.) Decided March 22, 1923.

Charles D. Crawford was convicted of breaking and entering a bank, and sentenced to imprisonment for not less than 15 nor more than 30 years in the State prison at Marquette.    Affirmed.

*W. J. Barnard,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *James E. Chandler,* Prosecuting Attorney., for the people.

MCDONALD, J.    The defendant was convicted under an information charging him with breaking and entering a bank at Lawrence, Michigan, with intent

to commit the crime of larceny and burglary. It was the theory of the people that in the nighttime of October 14, 1921, the defendant and three companions, driving a Maxwell automobile, stopped near the Home State Bank in the village of Lawrence. That the defendant left the car and accosted one Fred Kennedy, the night watchman, who was standing on the sidewalk near the bank, that during the conversation defendant drew a revolver and ordered Kennedy to put up his hands and turn his face to the door of the bank. He was then blindfolded and his hands tied behind his back. The men entered the bank through the transom over the door. They stripped the combination knob off the door of the vault and endeavored to blow it open by the use of nitro-glycerine. In this, however, they were not successful, and as daylight was approaching they abandoned the work. Before leaving they tied Kennedy to a post in the basement, cautioning him to remain quiet and telling him that they would return. About six weeks later defendant and a companion named Burns were arrested in a rooming house at South Bend, Indiana. In their room the officers found nitro-glycerine, soap, detonating caps, revolvers, wires, blankets and other tools commonly used by burglars in their business. The defendant admitted to the officers that these tools and other articles belonged to him. At the time of his arrest he had a Maxwell car in a garage in South Bend, which Kennedy identified as the car used by the men on the night of the attempted robbery of the bank in Lawrence. He also identified the defendant as the man who held him up before the bank at that time. On the trial the defendant was not sworn as a witness. His defense was an alibi. He was convicted and sentenced. His case is now here on writ of error.

The first error discussed by counsel for defendant

in his brief is under the familiar heading: "Improper argument and remarks of counsel." In most cases where this objection is made, the remarks by way of comment on the testimony of witnesses are more vituperative than descriptive, but we find nothing of that character in this record, though counsel says:

"In old Athens when the whole populace sat in juries and the water clock was the only method of arresting an orator's progress, this was the style of address, abuse, insult, vilification, lies, contemptuous aspersions,—these were legal methods of frenzied argument. Greece fell because of the general injustice. Shall this method of argument be sanctioned in this great commonwealth? * * . * When the zeal or the depraved instincts of counsel leave them to violate the amenities of life, or to forget their professional standards as gentlemen, or to descend into the sawdust arena and to use expectorations as argument, the courts of last resort are earnest in checking violation of high professional conduct. They do this that public esteem and respect for the courts shall not deteriorate or diminish."

It must be admitted that if counsel has correctly characterized the prosecuting attorney's address to the jury, the court room on such occasion was no place for the goddess of justice. "Justice, when equal scales she holds, is blind." Being blind she may not have seen the prosecutor "descend into the sawdust arena," and there "use expectorations as arguments," but there was nothing to prevent her from hearing that "frenzied argument," such as the orators of "old Athens" were wont to deliver and which contributed to the fall of Greece. If the prosecutor indulged in such misconduct, the trial judge should have rebuked him and cautioned the jury against being influenced by this ancient style of oratory. Turning to the record we find that the prosecuting attorney cast the

following "contemptuous aspersions" on the character of the three alibi witnesses from Chicago:

"I say to you that I sincerely believe, I believe from the bottom of my heart, had we the proof, could we show it, we would show that the other three men at least that got out of the car in the village of Lawrence that morning, were Parker, O'Keefe and McIntosh."

The prosecutor should not have offered an opinion which had no basis in fact. Its effect, however, if it had any, was on the credibility of the witnesses whose testimony he was discussing. By competent evidence the people very conclusively showed that these witnesses were not testifying truthfully as to the defendant's presence in Chicago on the night in question. Their testimony was not entitled to any credit if the testimony of the people's witnesses was to be believed. Under the circumstances, the remarks of the prosecutor were without prejudice, particularly in view of the caution of the court when it was called to his attention.

Objection is also made to the statement of the prosecuting attorney to the jury, "that the respondent has a criminal record and that it stands undisputed and uncontradicted." This statement was warranted by the admission of the defendant to the officers at the time of his arrest, that he had served time in a penal institution in Pennsylvania.

We have examined all of the alleged improper remarks of the prosecuting attorney as well as his conduct in the cross-examination of witnesses, and in them we find no reversible error.

Of the alleged errors in the admission and rejection of testimony, we do not deem it necessary to discuss any except that relating to the introduction in evidence of the tools and articles found in defendant's possession at the time of his arrest. Of this counsel says in his brief:

"These articles were claimed on the part of the prosecution to be such as are used by burglars. The finding of these implements and tools was about seven weeks after the time the alleged offense is claimed to have been committed. We contend that the finding of these tools was too remote to warrant the introduction of the same in evidence."

Without regard to the length of time intervening between the commission of the offense and the finding of the tools in defendant's possession, they were admissible as a part of the *res gestæ* of the arrest. If there were any merit to counsel's objection that the time was too remote, it would apply only to the use made of the evidence and not to its admissibility. Such tools found in the possession of the defendant soon after the commission of the offense could be considered by the jury as evidence of the intent with which the breaking and entering were made. But in his instructions to the jury the circuit judge did not permit the evidence to be used for this purpose. He instructed the jury as follows:

"This evidence was permitted to be used by the court not to show the substantive commission of the offense charged against the defendant in this case, but it was permitted for the purpose of showing the character of the defendant, if it does show anything to help the jury, and the conversation of the defendant with the officers at the time in relation to the same."

This restriction in the use of the testimony was at least as favorable to defendant as he could reasonably expect.

We have considered all of the alleged errors presented by the record. Most of them we have not specifically mentioned because we do not desire to extend this opinion by discussions that would serve no useful purpose. While some testimony got into the case which we think should have been excluded,

we are satisfied that it was wholly without influence on the result. The vital question in the case was the identification of the defendant. This was conclusively established by competent evidence. We are convinced that if there was any error it was not prejudicial.

The charge of the court was not open to the objections made to it by counsel. It was fair and impartial and clearly protected defendant's right under the law and the evidence.

We find no reversible error in the record.

The conviction is affirmed.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.